City of Webster Groves to Use of Philip C. Wise, Appellant, v. Seneca C. Taylor et al.—13 S. W. (2d) 646.

Division One, February 1, 1929.

956

W. K. Koerner and Philip C. Wise for appellant.

957

*E. G. Curtis* and *Seneca C. Taylor* for respondent.

RAGLAND, J.—This is a suit on a special tax bill issued by the city of Webster Groves for the construction of sewers in its Storm Water Sewer District No. 1. The petition is in the usual form. The answer admits the ownership of the property described in the petition; denies generally all the other allegations of the petition, and affirmatively alleges:

"For further answer these defendants state that the property described in plaintiff's petition and owned by these defendants is not in the natural drainage area supposed to be covered by Storm Water Sewer District No. 1 referred to in plaintiff's petition, and the natural drainage of said property is not toward the Storm Water Sewer District described in plaintiff's petition, but in the opposite direction, and it would be impossible for these defendants to drain their property into the sewers constructed in said alleged Storm Water Sewer District, and that said Storm Water Sewers are of no benefit to said property, and the including of these defendants' property in said district is illegal and the assessment against said property for the cost of said sewers constitutes the taking of defendants' property without due process of law, contrary to Section 30 of Article 2 of the Constitution of the State of Missouri and contrary to Section 1 of the Fourteenth Amendment to the Constitution of the United States, and the said tax bill is illegal, void, and not binding on these defendants and is not a lien against the said property of these defendants."

Other technical defenses, touching the validity and sufficiency of the ordinances creating the district, were also pleaded. But on the trial it developed that these were without substantial merit, and as they have not been referred to in either the brief or argument of the defendants in this court, we will treat them as abandoned.

Defendants' tract of land sought to be charged with the lien of the special tax bill contains approximately two acres. But for the southern boundary it would lie in the form of a rectangle. That boundary is formed by Big Bend Road, which runs in a northeasterly and southwesterly direction. The tract is 202 feet wide—east and west; its eastern boundary is 295 feet in length; its western boundary 435 feet; and its southern boundary, on Big Bend Road, 245 feet. The tract is said to front on Plant Avenue, which forms its eastern boundary. Big Bend Road is one of the principal thoroughfares of the city. Approximately 115 feet south of defendants' west line the street last named is intersected by Jackson Road, a street running east and west. Maple Avenue, a north-and-south street, lies a half block west of defendants' west line. There is a storm-water sewer in Maple Avenue, beginning at Jackson Road and extending northwardly. This storm-water sewer is the nearest of any in the district to defendants' property.

A civil engineer, Dziatzko, at defendants' request made a topographical survey of their ground. From his testimony, and his map, it appears that a high ridge extends from the east side in a somewhat southwesterly direction across the tract, approximately parallel with Big Bend Road. The ridge is slightly north of the middle of the tract, and the highest point on it is near the west line. Dziatzko testified that in a general way the tract drained toward the northeast and southeast. Interrogated in detail, he said that rain falling on the north 75 to 125 feet of the tract drains in part to the north and northwest, and in part to the northeast; that rain falling south of the dividing ridge drains for the most part to the south and southeast, but that some of it drains to the southwest; that water falling on the north portion drains into a sink hole on adjoining property not in the sewer district; that the water which flows southwest goes into another sink hole on defendants' property; that the water which flows east and northeast drains into Plant Avenue and from thence empties into the inlets of a sewer not in any way connected with the sewers of District No. 1; and that the water flowing southeast goes in part into Big Bend Road and from thence drains westwardly, emptying into an inlet at the northeast corner of Jackson Road and Maple Avenue. The witness also said that sink holes of the character of those referred to in his testimony sometimes filled up; that the water which would accumulate as a result of the filling of these would have to be provided for; and that such water would naturally flow or could be made to drain into the sewer on Maple Avenue.

A lay witness, who had had many years of practical experience in drainage work and who had resided near and observed defendants' property for a period of twenty years, testified that no water falling on it drained into, or toward, the sewer in Maple Avenue; and that, while ponds of water would accumulate if the sink holes were filled, none of the water could be gotten into the sewer in question unless it was pumped into it.

Webster Groves is a rapidly growing little city with a population now estimated at from ten to twelve thousand. Defendants' property is in what is termed "a high class residential district."

The circuit court found the issues generally for defendants, and gave judgment accordingly. The case comes to this court on plaintiff's appeal.

It has become a truism of constitutional law that special or local assessments are valid only when imposed to pay for improvements clearly conferring special benefits on the property assessed, and that such benefits must be substantial, certain, and capable of being realized within a reasonable time. It is equally well settled that whether in a given case property so burdened has received corresponding benefits is a legislative, and not a judicial, question; and that the legislative determination that such benefits are conferred is conclusive on both the owner and the courts, unless it be made to appear that the legislative action is fraudulent, or is "arbitrary and wholly unwarranted," "a flagrant abuse and by reason of its arbitrary character is a mere confiscation of particular property." [Branson v. Bush, 251 U. S. 189; West v. Burke, 286 Mo. 368; Prior v. Construction Co.. 170 Mo. 439, 71 S. W. 205; Heman v. Schulte, 166 Mo. 409, 66 S. W. 163.]

According to the pleaded defense, the storm sewers constructed in the district in question are of no benefit to respondents' property because it cannot be drained into them. The evidence offered by defendants to establish that no storm water will, or can, be drained from their premises into such sewers is far from conclusive. If the elevations are correctly shown on the map they offered in evidence, rain falling on the northwestern portion of their lot must flow in the direction of the Maple Avenue sewer, and for aught that appears eventually find its way into that drain. And certainly their expert, Dziatzko, testified that some of the surface water on the southeast portion would flow westwardly down Big Bend and Jackson Roads into the inlet of the sewer at the intersection of the last named street with Maple Avenue.

It also appears from Dziatzko's testimony that if the sink holes. on defendants' lot and on the property lying immediately north, are filled, storm water will accumulate which will naturally drain, or can be conducted. to the storm sewers of the district involved. The City Council of Webster Groves in devising a plan for the drainage and

960

sanitation of that portion of the city could not appropriate the sink holes as a part of its system of storm sewers; it had the right to assume, as it must have, that such sink holes will eventually be filled, either through natural causes or by the owners of the respective properties.

But if it be true that no water falling on respondents' lot will find its way into the sewers in question, it does not follow that no benefits will accrue to the property through their construction. If the lands immediately adjoining are drained, the beneficial effects of such drainage will innure in an appreciable way to defendants' property. Storm Water Sewer District No. 1 is possibly but a unit in a comprehensive plan adopted for the drainage of the entire city; and the city council in the exercise of its discretion had no doubt a valid reason for including defendants' property in this district rather than in some other.

From the foregoing brief summarization it is manifest that the evidence is wholly insufficient to show that the city council's action, in including respondents' property in the sewer district in question, was fraudulent, or arbitrary, or devoid of any reasonable basis, or a palpable abuse of power. Indeed the answer does not so allege, nor does it allege facts from which any such an inference is the necessary deduction. [Heman v. Schulte, supra.] The judgment of the trial court in annulling and setting aside, in effect, the legislative action of the city council is therefore without the support of either allegation or proof.

The judgment is reversed and the cause remanded with directions to the circuit court to enter judgment as prayed in the petition. All concur.