UNITED CEREBRAL PALSY ASSOCIA-
TION OF GREATER KANSAS
CITY, Respondent,

v.

Beverly ROSS, et al., Appellants.

No. 72010.

Supreme Court of Missouri,
En Banc.

June 19, 1990.

John B. Williams, County Counselor, William Gnofkow, Ava E. Sandage, Legal Counsel, Kansas City, for appellants.

Thomas P. O'Donnell, James B. Albertson, III, Overland Park, Kan., for respondent.

ROBERTSON, Justice.

The issue in this case is whether the exemption from taxation permitted by Mo. Const. art. X, § 6.1 and adopted in Section 137.100(5), RSMo 1986, is available to a charitable organization that owns real property, occupies a portion of it, and leases the remainder to other charitable organizations without the intention of making a profit. The trial court found the property exempt from taxation in its entirety. This case involves the construction of the revenue laws of this state; we have jurisdiction. Mo. Const. art. V, § 3. Affirmed.

I.

The facts are stipulated. Respondent United Cerebral Palsy Association of Greater Kansas City ("UCPA") is a not-for-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. 26 U.S.C. § 501(c)(3) (1988). UCPA is exempt from Missouri taxation and is a charitable organization within the meaning of Mo. Const. art. X, § 6.1 and Section 137.100(5), RSMo 1986. Appellants are Jackson County, Missouri, governmental officers responsible for the assessment and collection of real property tax.

In September, 1985, UCPA purchased a building to house its offices. The building purchased contained more space than UCPA could use, although UCPA anticipated that its growth would ultimately require it to use the entire building. Prior to acquiring the building, UCPA obtained commitments from other charitable organizations to rent space in the building. UCPA's agreements with its tenant charities were in part the outgrowth of encouragement by the United Way for charitable

organizations to enter into "resource sharing" arrangements. In addition to use of the space rented, UCPA provided to its tenant charities a common receptionist, a telephone system, computer services, secretarial services, copy services, meeting rooms and kitchen services. UCPA charged these charities approximately $7.00 per square foot as rent and for the common services and office equipment provided. The record shows that UCPA occupies 76.34 percent of the building; the other charities rented the remaining 23.66 percent. The stipulation shows that "UCPA is not making a profit on this rental."

Jackson County assessed the UCPA property at $163,660 and assessed real property tax against 23.66 percent of that assessed valuation. The county based its tax bill on that portion of the property rented to UCPA's tenants. UCPA paid the tax, but filed suit to recover taxes paid. The trial court found in favor of UCPA. By its officers, Jackson County appealed.

## II.

Art. X, § 6.1 provides in pertinent part: [A]ll property, real and personal, not held for private or corporate profit and used exclusively ... for purposes purely charitable ... may be exempted from taxation by general law.

Section 137.100 exempts from taxation:
   (5) All property, real and personal, actually and regularly used exclusively ... for purposes purely charitable and not held for private or corporate profit, except that the exemption herein granted does not include real property not actually used or occupied for the purpose of the organization but held or used as investment even though the income or rentals received therefrom is used wholly for ... charitable purposes.

## A.

■ The consideration of UCPA's claim for exemption is guided by several well-established principles. First, taxation of property is the rule and exemption from taxation is the exception. *Missouri Church of Scientology v. State Tax Comm'n*, 560 S.W.2d 837, 844 (Mo. banc 1977). Second, statutes granting exemptions from taxation are strictly, but reasonably, construed against the party claiming the exemption. *Iron County v. State Tax Comm'n*, 437 S.W.2d 665, 668 (Mo. banc 1968). Third, claims for exemption are not favored in the law. *Community Memorial Hospital v. City of Moberly*, 422 S.W.2d 290, 294 (Mo.1967). Finally, a property owner who claims the exemption bears a substantial burden to prove that his property falls within the exempted class. *City of St. Louis v. State Tax Comm'n*, 524 S.W.2d 839, 844 (Mo. banc 1975). The strict, but reasonable, construction of the exemption provided in Section 137.100 has been the subject of some evolution in this Court's cases.

## B.

■ *St. John's Mercy Hospital v. Leachman*, 552 S.W.2d 723 (Mo. banc 1977), represents the last in a series of cases in which this Court employed an all-or-nothing interpretation of the exemption statute. There, the hospital converted a building from a school of nursing to an office building. A portion of the building housed facilities for hospital services; a portion was leased to medically-related, commercial enterprises and private physicians at rentals comparable to commercially owned buildings in the geographic area. The physicians carried on their private practices in the leased space, but were required under the terms of their leases to participate in the hospital's teaching programs. Because "Missouri does not follow the partial exemption theory, and if any part of the property is used for a non-charitable purpose the whole is taxable," *City of St. Louis v. State Tax Commission*, 524 S.W.2d at 843, the Court held that the hospital was not entitled to the exemption provided in Section 137.100 for any portion of the building. *Leachman*, 552 S.W.2d at 726.

Slightly more than two years later, this Court overruled *Leachman*, and determined that Section 137.100(5) authorizes "a partial exemption of a building or tract,

where that building, or tract, is used in part for charitable purposes and in part for non-charitable purposes." *Barnes Hospital v. Leggett*, 589 S.W.2d 241, 244 (Mo. banc 1979). The Court instructed that in determining whether the property qualified for the Section 137.100(5) exemption, the three-part test established in *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Commission*, 566 S.W.2d 213, 224 (Mo. banc 1978), must be utilized.

## C.

*Franciscan* first requires that the property be actually and regularly used exclusively for purposes purely charitable as defined in *Salvation Army v. Hoehn*, 354 Mo. 107, 188 S.W.2d 826, 830 (1945). *Franciscan*, 566 S.W.2d at 224. By stipulation, the parties agree that the organizations to whom UCPA rents and for whom UCPA provides office equipment and support services are charitable. Appellants' brief further informs us that "[a]ppellants ... are not challenging the charitable not-for-profit status of Respondent ... or that of any of the tenants to whom it has leased a portion of its premises." The stipulation satisfies the first *Franciscan* criterion.

The second part of the *Franciscan* test demands that the property be owned and operated on a not-for-profit basis. *Franciscan*, 566 S.W.2d at 224. Appellants argue that it is the present use of the property, not the charity's future plans for it, that determines its taxability. If the charitable owner realizes a profit from the operation of the building, appellants argue, that portion of the building leased to the charity's tenants is taxable, the charitable character of the tenants' purposes notwithstanding.

*Franciscan* makes clear, however, that it is not the presence or absence of a profit that matters for purposes of the second test. Instead, the primary goal of the project is determinative.

The requirement that the property must be operated as a not-for-profit activity does not mean that it is impermissible for the project at times or even fairly regularly to operate in the black rather than on a deficit basis, provided, of course, that any such excess of income over expense is achieved incidentally to accomplishment of the dominantly charitable objective and is not a primary goal of the project, and provided further that all such gain is devoted to the charitable objectives of the project.

*Franciscan*, 566 S.W.2d at 224.

As we have previously said, the taxpayer bears the burden of showing that the property qualifies for the exemption from taxation. We interpret Section 137.100(5) to exempt property from taxation where it is not held for the purpose of generating a profit and is used exclusively for purposes purely charitable. The question of taxability is determined by the facts of each case. Here, appellants have stipulated that UCPA does not make a profit on its rentals. Moreover, the stipulation establishes that "UCPA acquired a facility to be used jointly by them and by other not for profit organizations." The primary purpose of the UCPA facility is, therefore, stipulated to be for the use of not-for-profit organizations. In so stipulating, we believe appellants conceded the second prong of the *Franciscan* test.

Appellants nevertheless persist, contending that the creation of equity in real property is a profit. This is especially so, appellants urge, when the "property is paid for with income derived from a commercial leasing venture."

Equity in real property can be acquired by the reduction of debt or by an appreciation in value, or both. The record is clear, however, that UCPA acquired this property primarily to house its growing administrative needs and to provide resource sharing for other charitable organizations, not as an investment. Even if one assumes, *arguendo*, that the acquisition of equity is a profit within the meaning of Section 137.100(5), that equity is incidental to the ownership of the building and not the primary objective of UCPA's ownership. The point is denied.

Third, *Franciscan* states that the dominant use of the property must be for the benefit of an indefinite number of people and must directly or indirectly benefit soci-

ety generally. *Franciscan,* 566 S.W.2d at 224. Appellants do not argue that the charitable uses to which this building is put violate the third prong of the *Franciscan* requirements. Their stipulation is consistent with this position.

In sum, the entirety of the UCPA building is used exclusively for charitable purposes. The primary purpose of the building is to provide a facility for the joint use of charitable organizations. No profit to UCPA is generated; profit is not a primary goal of UCPA's ownership of the property. The dominant use of the property benefits an indefinite number of people and directly or indirectly benefits society generally. The three-part test of *Franciscan* is met.

We find no requirement in Section 137.-100(5) that the exclusive and purely charitable use of the property for which an exemption is granted is limited to circumstances in which the property is used entirely by the charitable owner. Instead, the requirements of the statute are met if the property's use is purely charitable, irrespective of the number of charities using the property, and no private or corporate profit is intended. We hold, therefore, that the UCPA facility is exempt from taxation under Mo. Const. art. X, § 6.1 and Section 137.100(5).

### III.

The judgment of the trial court is affirmed.

All concur.